HENRY C. AGNEW

*v.*

THE MACOMB BUILDING AND LOAN ASSOCIATION *et al.*

*Opinion filed June 19, 1902.*

LOAN ASSOCIATIONS—*when a member withdrawing stock before maturity is not entitled to credit for profits.* Until the board of directors shall, from time to time, by resolution, apportion to all of the shares of stock the proportion of profits which have been actually earned, a member who withdraws his stock by paying his loan before maturity is not entitled to any of such profits, notwithstanding the secretary has apportioned the same and his report and accounts have been approved by a board of auditors, composed of stockholders, none of whom, however, were directors.

*Agnew* v. *Macomb Building and Loan Ass.* 96 Ill. App. 665, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of McDonough county; the Hon. JOHN A. GRAY, Judge, presiding.

The Appellate Court makes the following statement of the facts in this case:

"This was a bill in chancery, filed in the circuit court of McDonough county by the plaintiff in error, Henry C. Agnew, against the defendants in error, Macomb Building and Loan Association, Charles V. Chandler and John M. Keefer, (the latter two trustees named in the deed of trust in question,) to obtain a decree compelling a cancellation and satisfaction of record of a certain deed of trust which plaintiff in error gave to the association upon certain of his real estate, and which he claims he has paid, and charges that the defendants in error refused to cancel and satisfy same, although he requested them to do so before the bill was filed. A demurrer having been sustained to the bill, as amended, by the trial court, plaintiff in error excepted, and standing by it, a decree was entered dismissing it at his costs. *   *   *

"The bill was filed November 22, 1900, and, as amended, sets up that the Macomb Building and Loan Associa-

tion is a corporation organized in 1882 under the laws of Illinois, for the purpose of raising funds to be loaned only among its members, with its principal office at the city of Macomb, in McDonough county, Illinois; that a copy of its by-laws is attached to the bill, marked 'Exhibit A,' and made a part thereof; that April 15, 1898, plaintiff in error was a member of the association, owned twenty-eight shares of its capital stock, upon which he borrowed from it on that day $2800, and gave it a written obligation to re-pay same, and secured it by a deed of trust executed by himself and wife, which conveyed to said Chandler and Keefer certain of his real estate in trust, to secure the payment of said loan, which deed was duly recorded in the recorder's office of said county, and a copy thereof attached to this bill, marked 'Exhibit B,' and made a part thereof; that from the time plaintiff in error became the owner of said shares and obtained said loan, until November 3, 1900, he paid all dues, interest and premiums provided by said deed of trust and said by-laws, and in all things complied with all the rules, regulations and requirements of the association and said deed of trust; that by reason of the interest and premiums paid by plaintiff in error and other parties who borrowed money from the association, all the shares of its capital stock increased in value, and became entitled to certain credits as a portion of the net profits of the association, so that on November 3, 1900, the shares owned by plaintiff in error were entitled to a credit of $122, in addition to the then withdrawal value thereof; that on July 31 of each year since the association was incorporated, its secretary credited upon its account books, to all the shares of stock thereof, the portion of said net profits to which each of said shares were at the time, respectively, entitled, and made report thereof in writing to its stockholders at their regular meetings in August of each year, and they received and approved his reports and directed the same spread upon its records, which has

been done each year; that on July 31, 1900, the credits to
which the said stock belonging to plaintiff in error was
entitled on account of such net profits were $122, in ad-
dition to the withdrawal value of same, and on that day
said secretary credited said stock upon the account books
of the association with said sum of $122, it being the por-
tion of said net profits to which said stock was entitled;
that said secretary made report in writing, verified by
his affidavit, to the stockholders of the association at
their regular annual meeting held in August, 1900, of the
value of all the shares of stock of the association and
of all credits returnable on account thereof, said report
showing that the said shares owned by plaintiff in error
were then entitled to a credit equal to the withdrawal
value thereof, and said $122 in addition thereto, being
the sum credited upon said account books to said stock
by said secretary on July 31, 1900; that the board of di-
rectors of the association, at their regular meeting held
on the second Monday in July, 1900, appointed five of its
stockholders, none of whom were directors, as a board
of auditors to examine and audit the accounts of the as-
sociation; that said auditors did examine and audit said
accounts after July 31, 1900, and after said secretary had
credited said stock of plaintiff in error in said accounts
with said $122 in addition to the withdrawal value there-
of, they made report, in writing, to the stockholders of
the association at their regular annual meeting held in
August, 1900, stating that said accounts were correct;
that the stockholders of the association, at said annual
meeting, received said report of the secretary and the
report of said auditors, approved both of them, and or-
dered that each be spread upon the records of the asso-
ciation, and the same was done by its secretary; that
the profits of the various shares of stock of the associa-
tion have never been apportioned to said shares by it in
any manner other than as above stated; that said profits
have never been apportioned by its board of directors,

by resolution or otherwise, except that, when the shares of stock attained their full value by reason of the payment of dues and addition of profits apportioned in the manner herein stated, the board of directors would declare such stock fully matured; that thirty days before November 3, 1900, plaintiff in error gave the association notice in writing of his intention and desire to re-pay said loan, the full amount of which was then $2800, there being no arrearages due thereon, or on the shares of stock pledged to pay same, or upon the security appertaining thereto; and that the withdrawal value of said shares of stock held by plaintiff in error was then $907.86, which, with said $122 of profits apportioned thereto by the association, amounted to $1029.86, which plaintiff in error was entitled to be allowed in making settlement with the association for said loan, and which, being deducted from the amount thereof, left a balance due it of $1770.14, which plaintiff in error paid it, and which was all that was due it upon said loan; that the association is willing to make settlement with plaintiff in error by crediting his stock with said sum of $907.86, being the withdrawal value thereof, but claims that he is not entitled to an allowance of said sum of $122 in such settlement, and refused him such credit, and has transferred the credit of said $122 from his stock on its account books to the unearned profits of the association, claiming that its other shareholders are entitled to said profits instead of him; that the association claims that plaintiff in error is still indebted to it in said sum of $122 upon his shares of stock, and refused to cancel his said written obligation and deed of trust and surrender the same to him; that said deed of trust, as the same now appears unsatisfied, is a cloud upon the title to his said real estate; that he is entitled to have same released of record; that upon his paying said $1770.14 to the association, as hereinbefore stated, it was the duty of said Chandler and Keefer, as such trustees, to release same of record; that on No-

vember 10, 1900, he requested said Chandler and Keefer to release said deed of trust of record and both refused so to do, and that the association has, by its officers, instructed them not to release said deed of trust, and insists that they have no right to do so; and prays that the trustees be required to release the trust deed of record, and that the association be required to cancel the evidences of said loan, and for general relief.

"'Exhibit A' shows that the constitution of the association contains the following:

"'Article 6, sec. 7. A borrower may re-pay a loan at any time, but shall, at the time of re-payment, withdraw the shares upon which the loan was made.'

"'Article 8. Any stockholder may withdraw from the association upon giving thirty days' notice of his or her intention so to do, when he or she shall be entitled to receive the amount paid in by him.'

"And shows that among its by-laws is the following:

"'Article 6. Any stockholder withdrawing from the association shall be entitled to receive the amount paid in by him or her, with five per cent per annum, less proper fines and charges, provided no interest shall be paid until six months' payment shall have been made.'"

E. I. HAMPTON, for plaintiff in error.

SHERMAN, TUNNICLIFF & GUMBART, for defendants in error.

Per CURIAM: In deciding this case, the Appellate Court delivered the following opinion:

"The constitution and by-laws of the association, being authorized by the statute under which it was created, entered into and became a part of the contract which it made with the plaintiff in error, one of its members, which is the subject of inquiry in this case; and under them it seems plain to us that he is not entitled to have the $122 (alleged profits) credited to his loan, in addition

to the withdrawal value of his shares of stock, upon the settlement of his loan and the voluntary withdrawal of his stock before it matured according to the plan of the association, where members continue to hold their stock until it matures in the ordinary way.

"Plaintiff in error, however, claims he is entitled to said $122 under paragraph 83b (sec. 6c) of chapter 32 of our statute, which is as follows: 'Any member who shall have obtained a loan or advance on his shares, and who shall have given real estate as security, may, at any time, upon giving thirty days' previous notice in writing, repay the same. On settlement such member shall be charged with the full amount of such loan or advance, together with any and all arrearages due thereon, or on the shares pledged, or appertaining to the security given, and shall thereupon be allowed as a credit the withdrawal value of the shares pledged as security, together with such other credits as may be returnable on account thereof, and the balance shall be received by the association in full settlement and discharge of such loan or advance.' * * * But we think that that section must be construed in connection with preceding section 6b of the same act, which is as follows: 'Any member desiring to withdraw installment shares from any association doing business in this State, shall have power to do so by giving thirty days' notice of such intention to withdraw, when such member shall be entitled to receive the full amount of dues paid in on the shares sought to be withdrawn, and such interest thereon as fixed in the by-laws, and in addition thereto such proportion of the profits apportioned thereto as the board of directors may, from time to time, by resolution, determine, less such charges of the character enumerated in this act as may be due thereon: *Provided,* that the amount of such interest or profits paid on withdrawals shall not exceed the actual rate of earnings of the association.' * * * And with paragraph 82 (sec. 5) of

the same chapter, which confers the corporate powers of such associations upon its board of directors. And when effect is given to all, the conclusion naturally to be drawn therefrom is, that until the board of directors shall, from time to time, by resolution, apportion to all the shares of stock the proportion of profits which have been actually earned, those members who voluntarily withdraw theirs are not entitled to any of such profits, for they are only entitled to such, under the statute, after the directors have so declared.

"Under our statute, homestead loan associations are organized to enable their members to borrow money from them upon their shares of stock and real estate security, and to re-pay it in premiums, dues and interest to be paid in small installments, which in time may make profits which amount to enough to cancel the loan; then the stock is declared matured and the loan canceled. But the statute makes provision by which a member may voluntarily withdraw his stock and pay off his loan before the stock matures in the ordinary way, and in that case it provides that such withdrawing member shall be charged with the full amount of his loan, together with all arrearages due thereon, or on the shares pledged, or appertaining to the security given, and shall thereupon be allowed as a credit the withdrawal value of the shares pledged as security, 'together with such credits as may be returnable on account thereof, and the balance shall be received by the association in full settlement and discharge of such loan.' And in order to understand what is meant by the words 'such other credits as may be returnable on account thereof,' we must look to the statute itself, and looking there, we find section 6*b* declares the shares of voluntary withdrawing members are entitled to 'such proportion of the profits apportioned thereto as the board of directors may, from time to time, by resolution, determine.'

"This construction of the statute, in our opinion, is not only fair to the members who withdraw, but does

justice to those who remain until their shares are matured, and to whom the profits, if any, justly belong, for they must bear all losses which may and do occur; and also gives to the language used by the legislature the meaning which it fairly conveys when interpreted to effect the purposes for which such associations are organized, and it recognizes that the management of their corporate powers is with the board of directors, where the statute expressly places it.

"The bill, as amended, was doubtless drawn in order to have the court declare that the action of the secretary of the association, approved by the stockholders upon the report of its board of auditors, that the shares of stock which plaintiff in error held were on July 31, 1900, entitled to a credit of $122 for their portion of the net profits which the association had earned while he held them, should have the same effect as if the board of directors had, by resolution, so determined; but to so hold would be to declare that the secretary and stockholders could exercise the corporate powers of the association, when the statute expressly confers them only upon the board of directors.

"The amended bill, on its face, showed that plaintiff in error still owed $122 upon the loan he had made from the association, and for that reason he was not entitled to have the deed of trust securing it canceled and satisfied of record, and therefore the circuit court properly sustained the demurrer thereto, and as he stood by it, the decree dismissing it at his costs was proper also, and will be affirmed."

The Appellate Court, to which an appeal was taken from the decree of the circuit court, sustaining the demurrer and dismissing the bill, has affirmed said decree. We concur in such action, and in the foregoing views expressed in support thereof. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*